UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MANDI ABSALON,

                Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,[1]

                Defendant.

**REPORT AND RECOMMENDATION**

06-CV-709
(DNH/VEB)

---

## I. INTRODUCTION

In November of 2003, Plaintiff Mandi Absalon filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since October 30, 2003, primarily due to back pain, along with Attention Deficit Hyperactivity Disorder ("ADHD"), asthma, and related conditions. Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorneys, Conboy Kay Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, commenced this action on June 8, 2006, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of SSI benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On February 26, 2007, the Commissioner filed a Motion for Judgment on the

---

[1] Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. The Clerk of the Court is hereby directed to substitute Commissioner Astrue in place of his predecessor, Jo Anne B. Barnhart, as the defendant in this action pursuant to Rule 25 (d)(1) of the Federal Rules of Civil Procedure.

Pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 9).[2] On March 12, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 11).

## II. BACKGROUND

The relevant procedural history may be summarized as follows. Plaintiff applied for SSI benefits on November 14, 2003, alleging that she had been unable to work since October 30, 2003. (T at 41-42, 49). The application was denied on April 6, 2004. (T at 36-39). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on May 14, 2004. (T at 40). On April 25, 2005, Plaintiff appeared with counsel at a hearing before ALJ Charles Center. (T at 221-42). Plaintiff and her attorney appeared via video conference from Canton, New York. ALJ Center conducted the hearing from a location in Baltimore, Maryland. (T at 221).

On December 5, 2005, the ALJ issued a written decision denying Plaintiff's application for benefits. (T at 22-31). ALJ Center's decision became the Commissioner's final decision on April 27, 2006, when the Appeals Council denied Plaintiff's request for review. (T at 4-6).

Plaintiff commenced this action on June 8, 2006 (Docket No. 1). Plaintiff, through counsel, filed a supporting Brief on September 21, 2006. (Docket No. 5). The

---

[2]The memorandum of law filed in support of the Commissioner's motion was filed as a "Brief" and no motion appears on the official case docket. However, the memorandum specifically requests judgment on the pleadings pursuant to Rule 12 (c).

2

Commissioner interposed an Answer on September 27, 2006 (Docket No. 7) and filed a Brief/Motion for Judgment on the Pleadings on February 26, 2007. (Docket No. 9).

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of

> the regulations.
>
> If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.
>
> Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

   **1.   Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 30, 2003, the alleged onset of disability. (T at 27). Further, the ALJ found

that Plaintiff has a combination of impairments (obesity, back pain, fibromyalgia, asthma, and anxiety disorder with attention deficit syndrome) considered "severe" under the applicable regulations. (T at 27). However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the regulations. (T at 27).

After reviewing the medical evidence, the ALJ concluded that Plaintiff "has the residual functional capacity to sit for 6 of 9 hours, with alteration of position as needed; stand and walk for 2 of 8 hours; lift, carry, push and pull light items frequently and objects up to 10 pounds occasionally." (T at 27-28). In addition, the ALJ determined that Plaintiff can "never climb ladders, ropes, or scaffolds, but can occasionally climb stairs or ramps, and occasionally stoop, kneel, crouch and crawl." (T at 28). The ALJ found that Plaintiff was limited to "simple, routine one- and two-step tasks" due to "faulty memory, concentration and distraction from pain." (T at 28). The ALJ also concluded that Plaintiff could "occasionally interact with co-workers or a supervisor, but should not interact with the general public." (T at 28).

The ALJ noted that the Plaintiff has no past relevant work. (T at 29). However, considering Plaintiff's age (22 at the time of alleged onset of disability), educational background (10th grade high school), and residual functional capacity, the ALJ found that Plaintiff could perform other work that exists in significant numbers in the national economy. (T at 30). Accordingly, the ALJ concluded that Plaintiff is not under a "disability," as that term is defined under the Act, and denied the application for benefits. (T at 30).

As noted above, the ALJ's decision became the Commissioner's "final" decision when the Appeals Council denied Plaintiff's request for review. (T at 4-6).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers four principal arguments in support of her position.  First, she argues that the ALJ did not give sufficient weight to the opinions of her treating physicians.  Second, Plaintiff contends that the ALJ failed to properly assess her subjective testimony regarding pain and disabling symptoms.  Third, she asserts that the ALJ failed to properly determine her residual functional capacity.  Fourth and finally, Plaintiff argues that there is no substantial evidence to support the ALJ's conclusion that there is significant work in the national economy that Plaintiff could perform.  This Court will address each argument in turn.

#### a.    Consideration of Treating Physicians' Opinions

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998).

In the present case, Plaintiff began treating with Dr. Gail Dehart, an orthopedist, on October 17, 2002, slightly more than a year prior to the alleged onset of disability. (T at 88). Following her initial examination, Dr. Dehart opined that Plaintiff could lift five (5) pounds occasionally, stand and/or walk less than two (2) hours per day, sit less than six (6) hours per day, and engage in limited pushing and/or pulling activities. (T at 91).

Dr. Dehart continued to treat Plaintiff thereafter, including monthly visits and emergency room visits between October 2002 and April 2005. (T at 181-218). During the visits, Plaintiff complained of frequent pain, difficulty sleeping and dizziness when bending. (T at 183, 186, 189, 192, 195). Dr. Dehart prescribed numerous pain medications and sleep aids, with varying degrees of success. (T at 191). Dr. Dehart also treated Plaintiff for asthma, shortness of breath, headaches, and ADHD.   (T at 184, 191, 207).

On or about October 20, 2003, an MRI of Plaintiff's spine noted an "[e]nlarged dural sac of the thoracic area with extensive soft tissue densities posterior to the cord." (T at 115). A subsequent MRI, conducted on May 17, 2004, noted minimal disc bulging and marginal spurring at T11-T12. (T at 175).

Dr. DeHart completed a Medical Source Statement of Ability to Do Work-Related Activities form on March 25, 2005, in which she opined that Plaintiff could occasionally lift and/or carry ten (10) pounds, frequently lift and/or carry less than ten (10) pounds, and stand and/or walk for less than two (2) hours in an eight (8) hour workday. (T at 214). Dr.

Dehart further stated that Plaintiff must periodically alternate sitting and standing to avoid pain, noted her "constant" fibromyalgia pain, and opined that Plaintiff's pain "prevents her from being employed." (T at 215). Dr. Dehart concluded that Plaintiff's pain was "present and found to be incapacitating" and noted that medication would "severely limit" Plaintiff's effectiveness in the workplace. (T at 218). In a subsequent undated report, Dr. Dehart stated that Plaintiff's fibromyalgia prevented her from returning to work. (T at 181).

The ALJ afforded "[w]eight" to Dr. Dehart's opinion, without stating how much weight he was affording that opinion or specifically outlining the factors that he considered when deciding how much weight to give the opinion. (T at 28). Regarding Dr. Dehart's assessment of Plaintiff's physical limitations, the ALJ appears to have given Dr. Dehart's opinion some measurable weight, as the physical limitations (*e.g.* range of motion, ability to sit/stand, ability to lift/carry) ultimately determined by the ALJ are fairly close to Dr. Dehart's assessment. (T at 29).

Problematically, the ALJ also gave "weight" to a review undertaken by Richard B. Weiss, MD, a non-examining Disability Determination Services ("DDS") physician. (T at 29). Indeed, the ALJ described Dr. Weiss's review as "very thorough," which suggests that the review was afforded a fair measure of weight

However, Dr. Weiss's assessment included statements discounting Dr. Dehart's conclusions on the erroneous basis that Dr. Dehart, an orthopedist, was a "nurse practitioner." Dr. Weiss also opined without explanation that Dr. Dehart's conclusions were not supported by medical evidence and noted that Dr. Dehart's findings had not been co-signed by a doctor. (T at 134). The ALJ did not address this error or explain what effect, if any, it had on the weight afforded to Dr. Weiss's review. This gap in the record requires

9

further development. This Court therefore recommends a remand, wherein the ALJ should revisit his assessments of the weight of these two doctors and address what impact this error had on the weight that should reasonably be afforded to Dr. Weiss's determination.

In any event, because the ALJ's assessment of Plaintiff's *physical* limitations are essentially consistent with Dr. Dehart's determinations, the more significant question is whether the ALJ erred by failing to give controlling weight to Dr. Dehart's conclusion that Plaintiff's pain and medication side effects prevented her from maintaining employment. (T at 28). For the reasons discussed below in Section II.B.2.b, this Court finds that this issue also requires further development on remand.

### b.  Improper Discounting of Subjective Evidence

Dr. Dehart concluded that Plaintiff's pain was "found to be incapacitating," noted that medication would "severely limit" Plaintiff's effectiveness in the workplace, and that, ultimately, Plaintiff's fibromyalgia prevented her from returning to work. (T at 181, 218). On March 17, 2005, Plaintiff was examined by Dr. Charles Locke, M.D., who diagnosed fibromyositis and fibromyalgia, which he treated with trigger point injections. (T at 219).

Plaintiff testified at the hearing, explaining that she experienced constant lower back pain and frequent upper back pain, with muscle spasms. (T at 228). She also described periodic pain in her left hip, numbness and tingling in her left foot, headaches, and problems with balance. (T at 228-29). Plaintiff testified regarding her asthma condition and related problems breathing and sleeping. (T at 230). She further stated that she suffered from anxiety attacks related to her back pain. (T at 230). Plaintiff explained that she has difficulty concentrating, which she attributed to her ADHD and pain medications. (T at 231).

Plaintiff testified that she was able to sit and stand for ten (10) to fifteen (15) minutes and walk for approximately ten (10) minutes. She explained that she tried to avoid lifting items over five (5) pounds. (T at 233). Plaintiff testified that she performs light housework, but spends most of the day napping, using the computer, and watching television. (T at 234). She also explained that she has trouble concentrating, frequently forgetting appointments. (T at 236).

The ALJ discounted Dr. Dehart's assessment of the impact of Plaintiff's pain on her ability to work, noting that it was "an issue reserved to the Commissioner." (T at 28). Regarding Plaintiff's testimony, the ALJ concluded that her "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (T at 28). However, he determined that Plaintiff's "statements concerning the intensity, duration and limiting effects of these symptoms" were "not entirely credible." (T at 28).

In support of this finding, the ALJ noted that Plaintiff "vacuums, mops, carries baskets with wet clothes, changes beds, . . . rakes leaves and helps with flower beds." (T at 28). In addition, the ALJ cited Plaintiff's acknowledgment that she "helps with meal preparation four times a week for ½ hour . . .[,] shop[s] weekly for up to ½ hour, and . . . visit[s] with friends twice a week." (T at 28). The ALJ also noted that Plaintiff's assertions were "made less credible as her earnings record indicates that she has never engaged in substantial gainful activity." (T at 28).

The ALJ's determination regarding Plaintiff's credibility is problematic in several respects. First, "[i]t is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where ... it is supported by objective medical evidence." Simmons v. United States R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir.1992) (quoting Rivera v. Schweiker,

717 F.2d 719, 725 (2d Cir.1983) (citations omitted)).  In this case, the ALJ specifically acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (T at 28).  As such, Plaintiff's testimony regarding her pain was supported by objective evidence and was therefore entitled to "great weight."

Where, as here, an ALJ rejects subjective testimony concerning pain and other symptoms, the ALJ "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y.1987); see Valente v. Secretary of HHS, 733 F.2d 1037 (2d Cir.1984).

As discussed above, the ALJ discounted Plaintiff's subjective testimony because she acknowledged performing limited activities consistent with daily life.  However, "[s]uch activities do not by themselves contradict allegations of disability," as people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Moreover, the performance of these activities should carry less significance where, as here, the ALJ acknowledges that Plaintiff's medically determined impairments could reasonably be expected to produce the alleged symptoms and where the Plaintiff's treating physician concluded that the Plaintiff's pain and medication side effects render her unable to return to work.  In addition, Plaintiff testified that she performs her daily activities with significant pain. (T at 232-34).  The ALJ did not specifically discuss this testimony in his

decision, but relied upon Plaintiff's written statement from December 2003 regarding her daily activities.  Notably, the ALJ did not use the hearing as an opportunity to question Plaintiff regarding that statement or ask her to provide further details or evidence regarding her daily activities and the pain that she suffers in connection with those activities.

In addition, the ALJ explained that he was discounting Plaintiff's testimony because "her earnings record indicates that she has never engaged in substantial gainful activity." (T at 28).  This finding is suspect because it is not clear whether the ALJ considered the impact of Plaintiff's age (22 years old at the time of the onset of disability) on her work history.

The evidence in the record established that Plaintiff was employed at a series of part-time positions, mostly at restaurants, until she allegedly developed the disabling condition.  It would seem that many individuals in their early twenties would have a similarly sparse and part-time work history. Accordingly, it appears that the ALJ should not have significantly discounted Plaintiff's subjective complaints based upon her work history.  At a minimum, further development of the record is necessary because it is not clear whether the ALJ considered this fact at all and, if so, how much it impacted the ALJ's credibility determination.  These issues should be addressed by the ALJ on remand.

The foregoing omissions by the ALJ are particularly significant because of the significant evidence in the record tending to bolster Plaintiff's credibility.  For example, the medical records document numerous complaints by the Plaintiff of significant pain, which at times became "severe" and "unbearable." (T at 192, 193, 195, 203, 206, 219).  Plaintiff was treated in the EJ Noble Hospital Emergency Room on multiple occasions for back pain. (T at 159-160, 164-65).  Dr. Dehart, Plaintiff's treating physician, concluded that Plaintiff's

pain was "present and found to be incapacitating," opined that physical activity "increases pain to the extent that medication and/or bed rest is necessary," and determined that medication would impact Plaintiff's ability to work to the extent that it would "severely limit" her effectiveness "in the work place due to distraction, inattention, drowsiness, etc." (T at 218).

While the ALJ's credibility determination is generally "entitled to deference in light of the ALJ's ability to observe the plaintiff in person,"[4] that determination is entitled to less deference where, as here, the ALJ has attempted to "substitute [his] own judgment for that of [Plaintiff's] treating physician" regarding credibility. Scandura v. Astrue, No. 07-CV-5098, 2009 WL 648611, at *9 (E.D.N.Y. Mar. 10, 2009).

Indeed, having decided to reject the Plaintiff's testimony and the determination of her treating physician, the ALJ was obligated to point to objective medical evidence in the record indicating that Plaintiff's subjective complaints of pain were overstated. No such support can be found in the ALJ's decision. See Balsamo, 142 F.3d at 81 ("In the absence of a medical opinion to support the ALJ's finding as to Balsamo's ability to perform sedentary work, it is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.'") (quoting McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir.1983) (alterations in original); see also Dwyer v. Apfel, 23 F. Supp. 2d 223, 230

---

[4] It is noted that the ALJ's observations of plaintiff were made by video conference, thereby potentially reducing the ability to discern nuance in credibility observations.

(N.D.N.Y. 1998) (remanding case where the record demonstrated "that plaintiff's complaints are credible when considered in connection with the medical reports throughout the record which document the plaintiff's similar complaints about her symptoms").

Accordingly, and in light of the ALJ's failure to provide compelling reasons for finding Plaintiff's testimony "less than credibile" and for departing from the determination of her treating physician, it is recommended that the evaluation of Plaintiff's credibility be further developed on remand. See Dwyer, 23 F. Supp. 2d at 231.

### c. Improper Determination of Residual Functional Capacity

Plaintiff also challenges the ALJ's determination regarding her residual functional capacity. As discussed above, the ALJ's findings with regard to Plaintiff's physical capabilities (*e.g.* ability to lift/carry, sit/stand, push/pull) were fairly close to the findings made by Dr. Dehart. The real question is whether the ALJ's determination that Plaintiff was able to perform some sedentary work, notwithstanding her own testimony regarding pain and the determination of her treating physician, is supported by substantial evidence. Here, the record requires further development for the reasons stated above, specifically, because the ALJ's conclusions are based largely upon his evaluation of Plaintiff's credibility and the fact that his credibility determination is insufficiently supported. In addition, to the extent that the ALJ relied upon the DDS physician's evaluation of Plaintiff's residual functional capacity, the ALJ should explain what impact that physician's erroneous characterization of Dr. Dehart as a nurse practitioner had on the weight afforded to his report.

### d. Insufficiency of Evidence of Significant Work in the National Economy

At the hearing, the ALJ also solicited testimony from Joseph Rose, a vocational

15

expert. The ALJ asked the vocational expert to consider three (3) hypothetical scenarios, in which the ALJ described various physical limitations and asked the vocational expert to state whether significant work existed in the national economy for a person with such limitations. (T at 238-40). The ALJ relied upon the vocational expert's responses in support of his decision, explaining that an individual with physical limitations similar to Plaintiff's would be able to work as an "assembler (600 jobs regionally, 324,000 nationally) or order clerk (800 jobs regularly, 310,000 nationally)." (T at 30).

However, the ALJ's finding in this regard relies upon the supposition that Plaintiff's pain and side effects from her medication do not prevent her from working in the first place. In other words, in order to find that Plaintiff could perform any work, the ALJ had to first discount Plaintiff's subjective testimony and her treating physician's determination regarding the disabling impact of her pain and medication. For the reasons outlined above, this Court finds that the ALJ's determination as to that issue is in need of further development on remand.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Because the determination of benefits in this case largely turns upon an evaluation of Plaintiff's credibility and because deference is generally afforded to

the ALJ's conclusions in that regard, this Court is not inclined to recommend a reversal of the decision and an award of benefits. However, given the significant deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: March 20, 2009

Syracuse, New York

17